## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA
## 1:22-CV-00727-UA-JEP

| | |
|---|---|
| KIM NAUGLE and AFRIKA WILLIAMS, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| META PLATFORMS, INC., | Case No. 1:22-cv-00727 |
| -and- | Oral Argument Requested |
| DUKE UNIVERSITY HEALTH SYSTEM, INC., WAKEMED, and a Defendant Class of Facebook Partner Medical Providers, | |
| Defendants. | |

## DEFENDANT DUKE UNIVERSITY HEALTH SYSTEM, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant Duke University Health System, Inc. ("DUHS") submits this Memorandum in

Support of its Motion to Dismiss Class Action Complaint.

## I.    INTRODUCTION

Plaintiff Afrika Williams alleges that DUHS violated her privacy rights by installing

an advertising technology called Facebook Pixel on the "login page" to its patient portal.[1] Williams claims that this caused information to be transmitted to Facebook from which Facebook could determine that she was a DUHS patient. Williams also claims that the installation of the Facebook Pixel on the "login page" could generally cause the following information to be transmitted to Facebook: "[t]hat the patient had previously been at a patient portal page about a particular health area/concern." However, Williams herself does not make any allegation about any portal pages she herself visited or "about a particular health area/concern" she had. Thus, the only allegation specific to Williams is that by accessing the "login page," information was sent to Facebook that could have allowed Facebook to identify her as a potential DUHS patient.

Even accepting Williams' well-pled allegations as true, the fact that information was sent to Facebook that might have identified her as a DUHS patient, standing alone, does not support any of her causes of action. As against DUHS, the Complaint therefore should be dismissed with prejudice.

---

[1] DUHS is a leading academic and health care system that is committed to delivering quality health care to its patients. For a limited period of time between March 23, 2022 and June 17, 2022, the Facebook Pixel was, unbeknownst to DUHS, inadvertently placed on pages within the DukeMyChart patient portal. No PHI, however, was transmitted to Facebook as a result of the temporary and inadvertent installation of Facebook Pixel within the patient portal. When DUHS learned that the Facebook Pixel was on the patient portal, it took immediate action to have the Facebook Pixel removed months before Plaintiffs filed this suit. The allegations in the Complaint do not involve the inadvertent installation of Facebook Pixel within the patient portal, however. Instead, they involve an alleged installation of the Pixel on what the Plaintiffs refer to as the "login page" to the portal, which is actually a page on DUHS's public-facing website that contains a link to the patient portal.

2

## II. FACTS

This case was brought by two Plaintiffs, Afrika Williams and Kim Naugle. Compl. ¶ 3. Naugle does not allege any dealings with DUHS. *Id.* ¶¶ 3, 32, 36. With respect to Williams, the only specific allegations she makes are that she is a DUHS patient who used the "DukeMyChart" patient portal while the Facebook Pixel was present, which caused the fact that she signed into the patient portal to be transmitted to Facebook, from which Facebook could determine that she is a DUHS patient. *Id.* ¶¶ 3–4, 33 and 35. Williams does not plead the nature of any substantive communications she had on the patient portal or what, if any, medical information or conditions were transmitted to Facebook, or how she was possibly harmed. The remainder of the Complaint contains general allegations of types of information that could have been transmitted to Facebook by hypothetical users of the patient portal—and not any specific allegations about Williams. *Id.* ¶¶ 58–86.

Based on these allegations, Williams asserts claims against DUHS for: "(1) breach of contract; (2) intrusion upon seclusion/breach of privacy; (3) federal and state electronic communications privacy and wiretap claims; (4) negligent misrepresentation; and (5) negligence, including negligence per se." *Id.* ¶ 27. Williams seeks to being these claims on behalf of a class defined as follows:

> All Facebook users who are current or former patients of medical providers in the United States with web properties through which Facebook acquired patient communications relating to medical provider patient portals, appointments, phone calls, and communications associated with patient portal users, for which neither the medical provider nor Facebook obtained a HIPAA, or any other valid, consent.

*Id.* ¶ 97.

3

Plaintiffs also seek to bring this case as a defendant class action "against a class consisting of Defendant health care institutions that deployed the Facebook Pixel on their web properties" (the "Defendant Class"). *Id.* ¶ 108. They seek to have DUHS and WakeMed serve as representatives of the proposed Defendant Class to address what Plaintiffs allege are common questions of law and fact, including: (1) whether numerous health institutions' respective privacy policies are contracts and, if so, whether they were breached; and (2) whether members of the proposed Defendant Class are liable for negligence, invasion of privacy/intrusion upon seclusion, violations of HIPAA violations or the Electronic Communications Privacy Act. *Id.* ¶¶ 110–11.

## III. QUESTIONS PRESENTED

1. Should the Court dismiss the Complaint as to DUHS because Plaintiffs lack any injury for purposes of Article III standing?

2. Should the Court dismiss the Complaint as to DUHS because Plaintiffs fail to state a claim?

## IV. STANDARD OF REVIEW

Under Rule 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject-matter jurisdiction. *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). In assessing a Rule 12(b)(1) facial challenge to standing, courts accept factual allegations as true but "do not [] apply the same presumption of truth to 'conclusory statements' and 'legal conclusions' contained in [the] complaint." *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

4

Here, DUHS contends that subject-matter jurisdiction is lacking because Plaintiffs do not have standing. To have standing, Plaintiffs must plausibly allege: "[1] an injury in fact, [2] fairly traceable to the defendant's conduct, [3] that is likely to be redressed by a favorable decision from the court." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To allege injury in fact, Plaintiffs must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* at 560. To be imminent, the threat of future injury must be "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 416 (2013). Moreover, Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class…." *See Warth v. Seldin*, 422 U.S. 490, 502 (1975).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the complaint. *See E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The Court should dismiss a Complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Although the Court must accept as true the facts alleged in the Complaint, it should not accept the legal conclusions drawn from the facts. *See E. Shore Markets, Inc.*, 213 F.3d at 180. Similarly, the Court need not accept unwarranted inferences, unreasonable conclusions, or arguments. *See id.* The Complaint must contain sufficient factual allegations to state a facially plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that

5

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* (citing *Twombly*, 550 U.S. at 556). Thus, to survive a Rule 12(b)(6) motion, the complaint requires something more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *See id.* (citing *Twombly*, 550 U.S. at 555).

## V. ARGUMENT

### A. The Complaint Should Be Dismissed as to DUHS Because Plaintiffs Lack Standing

The Complaint should be dismissed as to DUHS because Plaintiffs do not plausibly allege injury in fact caused by DUHS, so Plaintiffs lack standing. To have standing, Plaintiffs must establish:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*See Beck*, 848 F.3d at 269 (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013)).

Plaintiff Naugle does not allege any dealings with DUHS, let alone dealings that caused her injury. Instead, she alleges she is a patient of Defendant WakeMed and that she was injured by WakeMed. Compl. ¶¶ 3, 32, 36. Since she does not allege any injury caused by DUHS, she does not have standing to assert claims against DUHS.

Plaintiff Williams alleges that she is a DUHS patient, but she fails to allege any specific injury caused by DUHS. *Id.* ¶¶ 3, 33. Instead, she relies on generic and unsupported allegations that "Plaintiffs and Plaintiff Class Members" suffered the following injuries: (1) "loss of money and/or property"; (2) disclosure of protected health

6

information ("PHI"); (3) "lost benefit of their bargain"; and (4) time and money spent on mitigation efforts. *Id.* ¶¶ 195, 212. These vague allegations are deficient on their face and, even if this were not the case, they would fail for the reasons set forth below.

*Loss of money and/or property.* Williams' allegations of lost money and/or property do not constitute an injury in fact because she fails to allege any facts to support her vague allegation that "Plaintiffs and Plaintiff Class Members" lost "money and/or property." *Id.* ¶ 195. Moreover, Williams must plausibly allege that *she* suffered an injury in fact and cannot rely on generic allegations that unidentified members of the putative class were injured. *See Warth*, 422 U.S. at 502; *Beck*, 848 F.3d at 269–70. Williams was required to allege specific facts showing that she lost money and/or property as a result of DUHS's alleged use of the Facebook Pixel, but she fails to do so. Thus, her allegation of lost money and/or property does not establish injury in fact.

*Disclosure of PHI.* Williams' allegation that "Plaintiffs and Plaintiff Class Members have suffered an injury in fact, including… the disclosure of their personally identifiable data" fails to establish injury in fact because "a mere compromise of personal information, without more, fails to satisfy the injury-in-fact element…." *See* Compl. ¶ 195; *Hutton v. Nat. Bd. of Examiners in Optometry, Inc.*, 892 F. 3d 613, 621 (4th Cir. 2018); *Beck*, 848 F.3d at 275 ("[T]he mere theft of [medical information], without more, cannot confer Article III standing.").

*Lost benefit of their bargain.* The Court should reject Williams' attempt to establish injury based on the alleged loss of the benefit of her bargain because courts reject this theory where, as here, plaintiff fails to allege that the value of the services they

7

purchased was diminished. *See Chambliss v. Carefirst, Inc*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (rejecting benefit of the bargain theory because "Plaintiffs make no allegations that the data breach diminished the value of the health insurance they purchased"); *Podroykin v. Am. Armed Forces Mut. Aid Ass'n*, No. 1:21-CV-588, 2022 WL 6755834, at *5 (E.D. Va. Oct. 11, 2022) (rejecting benefit of the bargain theory because "the Fourth Circuit has never held that an overpayment or benefit-of-the-bargain theory in a data breach context is sufficient to confer standing" and courts "consistently reject[] this theory in data breach cases where plaintiffs have not alleged that the value of the goods or services they purchased was diminished"). Williams alleges she purchased medical care from DUHS, but she does not allege that her medical care was deficient, so the alleged loss of the benefit of her bargain does not confer standing. Compl. ¶¶ 3, 33. Moreover, Williams fails to allege any facts supporting the conclusion that she bargained for any particular level of security for her PHI, so she cannot show that she didn't receive the benefit of her alleged bargain.

**Time and money spent on mitigation efforts.** Williams' generic and unsupported allegation that "Plaintiffs and Plaintiff Class Members… lost time and money incurred to mitigate this improper disclosure" does not establish injury in fact. *Id.* ¶ 212. Notably, she does not offer any factual allegations to support the inference that *she* "lost time and money," nor does she allege what mitigation efforts she undertook or how they relate to the allegations in the Complaint. Moreover, courts in this Circuit routinely reject efforts to establish standing based on alleged mitigation efforts. *See, e.g., Beck*, 848 F.3d at 276–

8

77; *Chambliss*, 189 F. Supp. 3d at 571-72; *Darnell v. Wyndham Cap. Mortg., Inc.*, No. 320CV00690FDWDSC, 2021 WL 1124792, at *5–7 (W.D.N.C. Mar. 24, 2021).

### B.    Williams Fails to State Claims for her Asserted Causes of Action

The Court should also dismiss the Complaint as to DUHS because Williams fails to state claims for her asserted causes of action: (1) breach of contract; (2) intrusion upon seclusion/constitutional invasion of privacy; (3) violation of the Electronic Communications Privacy Act ("ECPA"); (4) negligent misrepresentation; and (5) negligence and negligence per se.[2]

### 1.    Breach of Contract

The Court should dismiss Williams' breach of contract claims against DUHS because she fails to allege the existence of a valid contract and its breach.  Her breach of contract claims against DUHS are governed by North Carolina law.  North Carolina courts apply the law of the place where the contract was made, which is the where the last act to make the contract occurred.  *See Ferrante v. Westin St. John Hotel Co.*, 559 F. Supp. 3d 492, 503 (E.D.N.C. 2020), *aff'd*, 2022 WL 396022 (4th Cir. Feb. 9, 2022).  Since Williams and DUHS reside in North Carolina and all alleged contacts between them occurred in North Carolina, North Carolina law governs.  Compl. ¶¶ 3, 28, 31–33, 35.  Thus, Williams must satisfy the following elements: (1) the existence of a valid contract and (2) breach of

---

[2] DUHS's Rule 12(b)(6) arguments are directed at Williams because Naugle does not allege any dealings with DUHS (*supra* at 3) and, therefore, cannot state a claim against DUHS.

the terms of that contract."). *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 43 (2006).

Williams fails to allege the existence of a valid contract, so her breach of contract claims fail. Compl. ¶¶ 121–35. Notably, she alleges the existence of "valid and binding contracts" with Facebook, but she does not allege a valid contract with DUHS, so her claims fail as to DUHS. *Id.* ¶¶ 122–30.

Moreover, Williams' breach of contract claim is premised on DUHS's privacy policy, which DUHS and all hospitals are required to provide under federal law, specifically the regulations promulgated under HIPAA. As a result, courts have found that statements made in hospitals' Notice of Privacy Policies do not form contractual obligations and cannot support a breach of contract claim. *See, e.g.*, *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) ("Because the Defendants are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient, these provisions cannot create contractual obligations."); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *20 (D.N.J. Dec. 16, 2021) ("Plaintiffs paid Defendants to perform healthcare services, *i.e.*, blood work. Incidentally, Plaintiffs were required to provide Defendants with their personal information to ensure Defendants received payment from Plaintiffs or their insurers. Plaintiffs do not credibly allege that Defendants assented to safeguard Plaintiffs' Personal Information to an extent beyond what is already required by federal law."); *Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 11–12 (D.D.C. 2015) ("[I]t is well established that not all promises rise to the level of binding

10

contractual obligations. For example, a promise that is offered freely and equally to all people—without regard to who has provided consideration and who has not—is not a contract.") (citing *Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 612 (1819) ("There can be no contract in which the party does not receive some personal, private, individual benefit. To make ... a private contract, there must be a private beneficial interest vested in the party who pays the consideration.")).

Even assuming, arguendo, that DUHS's privacy policy could form the basis of a breach of contract claim, Williams' claims fail because she does not plausibly allege that DUHS breached its privacy policy. DUHS's privacy policy explains that DUHS is "committed to protecting the privacy of [PHI]," which the privacy policy defines as "information that identifies an individual or that reasonably can be used to identify an individual, ***and*** that relates to the individual's past, present, or future health or condition, healthcare provided to the individual, or the past, present, or future payment for healthcare provided to the individual." *See* DUHS Notice of Privacy Practices (cited Compl. ¶ 10 n.1) (emphasis added).[3] Williams fails to allege any facts to support the inference that DUHS disclosed her "past, present, or future health or condition, healthcare provided to [her], or the past, present, or future payment for healthcare provided to [her]." *See* Compl. ¶ 134. Thus, she fails to plausibly allege a breach of the alleged contract.

---

[3] *See Pueschel v. United States*, 369 F.3d 345, 353 n. 3 (4th Cir.2004) (explaining that the court may consider documents incorporated by reference in the complaint without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment).

Moreover, Plaintiffs' conclusory allegation that "implied contracts existed between Defendants and Plaintiffs that Defendants would not conspire with others to violate Plaintiffs' legal rights to privacy in their individually identifiable health information" does not come close to establishing "the existence of a valid contract and [] breach of the terms of that contract." *See* Compl. ¶ 131; *Bob Timberlake Collection, Inc.*, 176 N.C. App. at 43.

## 2. Intrusion Upon Seclusion—Constitutional Invasion of Privacy

Williams' claims for intrusion upon seclusion and violation of Article I, section 1 of the California Constitution are without merit and should be dismissed.

Williams' intrusion upon seclusion claims are governed by North Carolina law because she resides in North Carolina, so her alleged injury, if any, occurred there. *See* Compl. ¶ 33; *Boudreau v. Baughman*, 322 N.C. 331, 335 (1988) (explaining that tort claims are governed by the law of the state where injury occurred). Under North Carolina law, "[intrusion by seclusion] is defined as the intentional intrusion physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns … [where] the intrusion would be highly offensive to a reasonable person." *See Tillet v. Onslow Mem'l Hosp., Inc.*, 215 N.C. App. 382, 384 (2011) (internal quotation marks omitted). "Examples of recognized intrusions upon seclusion include physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Id.* (internal quotation marks omitted).

12

The conduct alleged here does not remotely resemble that which has been recognized as intrusions upon seclusion. Williams alleges she voluntarily provided information directly to DUHS through its patient portal, so there was no intrusion and DUHS's receipt of information voluntarily provided by Williams is not highly offensive. *See* Compl. ¶¶ 3, 33; *Russ v. Causey*, 732 F. Supp. 2d 589, 608 (E.D.N.C. 2010), *aff'd in part*, 468 F. App'x 267 (4th Cir. 2012) ("An intrusion occurs where the solitude, seclusion, private affairs, or personal concerns of a person are invaded in circumstances where that person would otherwise have a reasonable expectation of privacy."); *Tillet*, 215 N.C. App. at 385 ("'The defendant is subject to liability… only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.'") (quoting RESTATEMENT (SECOND) OF TORTS § 652B, cmt. c). Indeed, Williams consented to DUHS's receipt of the information at issue, so she cannot assert a claim for intrusion upon seclusion. *See Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718 (4th Cir. 2015) ("It is a general maxim of tort law that 'no wrong is done to one who consents.'") (quoting RESTATEMENT (SECOND) OF TORTS § 892A (1979) ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it.")).

Williams' claim based on the California Constitution fails for two reasons. *First*, Williams fails to allege any facts that would support application of the California Constitution to her claims against DUHS. To the contrary, she alleges she and DUHS are North Carolina residents, so California's Constitution has no application to her claims against DUHS. *See* Compl. ¶¶ 33, 35; *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d

13

1089, 1095–96 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017) (rejecting extraterritorial application of California's Constitution).  *Second*, even if there were a connection to California, Article I, Section 1 of California's Constitution does not provide for a right of action.  *See Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 n.6 (1990) ("No case has ever held that [Cal. Const. art. I, § 1] … gives rise, in and of itself, to a private right of action for damages…."); *Weimer v. Cnty. of Kern*, No. 1:06-CV-00735, 2006 WL 3834237, at *6–9 (E.D. Cal. Dec. 28, 2006) (striking claims based on Cal. Const. art. I, § 1 because it does not "contain[] guidelines, mechanisms, or procedures from which a damages remedy might be inferred"); *Starrett v. State*, No. F033985, 2002 WL 598531, at *6 (Cal. Ct. App. Apr. 9, 2002) ("[I]t must be concluded that article 1, section 1 is not self-executing in the sense that it does not provide an independent basis for a private right of action for damages.").

### 3. Violation of the Electronic Communications Privacy Act

Williams' claims under the Electronic Communications Privacy Act ("ECPA") fail because DUHS did not intercept private communications.  "A claim under the Wiretap Act requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted); Compl. ¶ 152 ("The [ECPA] prohibits the intentional interception of the contents of any electronic communication.") (citing 18 U.S.C. § 2511).  Williams cannot satisfy the second and fifth elements.

14

Williams alleges she voluntarily provided her information to DUHS, so there was no interception. *See* Compl. ¶¶ 3, 33; 18 U.S.C. § 2511(2)(d) (explaining that the ECPA does not apply when "such person is a party to the communication or where one of the parties to the communication has given prior consent"); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 844 (holding that there can be no interception by one who is a party to the communication) (citing 18 U.S.C. § 2511(2)(d)). Thus, Williams cannot satisfy the second element of her ECPA claim.

Even if DUHS had intercepted a communication, Williams cannot satisfy the fifth element of her ECPA claim because DUHS did not use a "device" to intercept a communication. Williams alleges the existence of six relevant devices for her ECPA claim, only one of which was plausibly under DUHS's control. Compl. ¶ 159(e) ("The web-servers of the Defendant Medical Providers' web properties where the Facebook Pixel was present"). However, servers are not "devices" under the ECPA, so her claims fail. *See Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. CV SAG-18-2315, 2019 WL 2233535, at *21 (D. Md. May 23, 2019); *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 744 (S.D. Tex. 2010).

### 4. Negligent Misrepresentation

"It has long been held in North Carolina that [t]he tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *See Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742 (2003) (internal quotation marks omitted). Williams cannot state a claim for four reasons.

15

*First*, Williams fails to comply with Rule 9(b). "Federal courts have repeatedly found that the North Carolina tort of negligent misrepresentation sounds in fraud and have applied Rule 9(b) to it." *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727–28 (M.D.N.C. 2015) (collecting cases); *Levy v. Infilaw Corp.*, No. 3:17-CV-00026-GCM, 2017 WL 3573825, at *5–6 (W.D.N.C. Aug. 17, 2017). However, the Complaint falls well short of satisfying Rule 9(b) because it does not "state with particularity the circumstances constituting fraud[.]" *See* FED. R. CIV. P. 9(b); Compl. ¶¶ 180–81 (vaguely alleging "Defendant Medical Providers" made an untrue statement).

*Second*, Williams fails to allege a pecuniary loss. *See Howard v. Cnty. of Durham*, 227 N.C. App. 46, 55 (2013) ("A claim for negligent misrepresentation must allege pecuniary loss."); *Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 160 (2017) (requiring a "pecuniary loss"). Williams does not allege a "pecuniary loss"; she merely alleges that "Plaintiffs and Plaintiff Class Members were harmed as set forth above" and leaves the Court and DUHS to guess which allegations are relevant. Compl. ¶ 185. As best DUHS can surmise, Williams' vague allegations of "loss of money and/or property" and "lost time and money incurred to mitigate" may be what she is referencing, but she makes no effort to explain what these purported pecuniary losses are or how they were caused by the alleged negligent misrepresentation, so she fails to plausibly allege a pecuniary loss. *Id.* ¶¶ 195, 212.

*Third*, even if Williams' allegations were enough to allege a pecuniary loss caused by the alleged negligent misrepresentation, that would not salvage her claims because such losses would be barred by the economic loss rule. "The economic loss rule, as it has

16

developed in North Carolina, generally bars recovery in tort for damages arising out of a breach of contract[.]" *See Rountree*, 252 N.C. App. at 159–60 (dismissing negligent misrepresentations claims based on the economic loss rule); *Boone Ford, Inc. v. IME Scheduler, Inc.*, 262 N.C. App. 169, 175 (2018) (same). Williams' negligent misrepresentation claims are based on DUHS's privacy policy, which also form the basis of her breach of contract claims. Thus, she cannot recover for negligent misrepresentation and breach of contract because these claims are mutually exclusive under her allegations. Compl. ¶¶ 96, 129, 180.

*Fourth*, Williams' negligent misrepresentation claims fail because she does not allege that she was engaged in a business transaction. Under North Carolina law, one breaches their duty for purposes of a negligent misrepresentation claim when "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [he] supplies false information for the guidance of others in their business transactions…." *See Jordan v. Earthgrains Companies, Inc.*, 155 N.C. App. 762, 767–68 (2003). Williams alleges that the transaction between her and DUHS was for "medical care," which is not a business transaction. *Id.* (affirming summary judgment on negligent misrepresentation claim because plaintiff failed to show defendant was providing guidance in the context of a business transaction); *Carrington v. Duke Univ.*, No. 1:08CV119, 2011 WL 13324486, at *27–28 (M.D.N.C. Mar. 31, 2011), *rev'd on other grounds*, 703 F.3d 636 (4th Cir. 2012) (dismissing negligent misrepresentation claim because it did not involve a business transaction). Since the transaction between Williams and DUHS was not a business transaction, her negligent misrepresentation claim fails.

17

### 5.     Negligence and Negligence Per Se

Williams' negligence and negligence per se claims are governed by North Carolina law for the reasons stated *supra* at 12.  To prevail on her negligence claim, she must establish: (1) a duty requiring DUHS to conform to a certain standard of conduct; (2) failure to conform to that standard; (3) causation; and (4) actual loss or damage.  *See Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 268 N.C. App. 334, 338 (2019).  Further, to establish negligence per se, she must establish: (1) DUHS had a duty pursuant to a statute or ordinance; (2) the statute or ordinance was created to protect a class of persons that includes Williams; (3) DUHS violated its duty; (4) injury to an interest protected by the statute or ordinance; (5) the injury was contemplated by the statute or ordinance; and (6) proximate causation.  *See Asher v. Huneycutt*, 2022-NCCOA-517, ¶ 22, 876 S.E.2d 660, 666.

Williams' negligence and negligence per se claims fail under the economic loss rule because they arise out of an alleged breach of contract, *supra* at 16–17, and her negligence per se claims fail for two additional reasons.  Compl. ¶ 213.  *First*, the FTC Act and HIPAA do not provide for a private right of action, so violation of these Acts cannot support a negligence per se claim.  *See J.R. v. Walgreens Boots All., Inc.*, No. 20-1767, 2021 WL 4859603, at *7–8 (4th Cir. Oct. 19, 2021) (affirming dismissal of negligence per se claims premised on HIPAA and the FTC Act because they do not provide for a private right of action); *Hetzel v. JPMorgan Chase Bank, N.A.*, No. 4:13-CV-236-BO, 2014 WL 7336863, at *7 (E.D.N.C. Dec. 22, 2014) (dismissing negligence per se claims because the underlying statute did not provide for a private right of action).  Moreover, she cannot state

18

a claim for violation of the ECPA, *supra* at 14–15, so it cannot support her negligence per se claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed as to DUHS because Plaintiffs lack standing and cannot state claims against DUHS for their asserted causes of action.

MCGUIREWOODS LLP

/s/ Mark E. Anderson
Mark E. Anderson (Bar No. 15764)
manderson@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Phone:  919.755.6600
Fax:  919.755.6699

BAKER & HOSTETLER LLP

Paul G. Karlsgodt (notice of special
appearance forthcoming)
1801 California Street, Suite 4400
Denver, CO 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
pkarlsgodt@bakerlaw.com

Elizabeth A. Scully (notice of special
appearance forthcoming)
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Tel: (202) 861-1500
Fax: (202) 861-1783
escully@bakerlaw.com

*Attorneys for Duke University Health
System, Inc.*

19

## <u>CERTIFICATE OF WORD COUNT</u>

In accordance with LR 7.3(d)(1), I hereby certify that the foregoing brief contains fewer than 6,250 words.

/s/ Mark E. Anderson
Mark E. Anderson (Bar No. 15764)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **<u>8th of November 2022</u>**, I electronically filed the foregoing **<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT</u>** with the Court using the CM/ECF system, which will automatically serve all attorneys of record via the Courts CM/ECF System.

/s/ Mark E. Anderson

Mark E. Anderson (Bar No. 15764)