UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KIM NAUGLE and AFRIKA WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>-and-<br><br>DUKE UNIVERSITY HEALTH SYSTEM, INC., WAKEMED, and a Defendant Class of Facebook Partner Medical Providers,<br><br>Defendants. | Case No. 1:22-CV-00727-UA-JEP |

### DEFENDANT WAKEMED'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO SEVER AND TRANSFER

Pursuant to Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a), Defendant WakeMed Health and Hospitals ("WakeMed") respectfully moves to sever and transfer Plaintiffs' claims against it to the Raleigh Division of the Eastern District of North Carolina for consolidation with an overlapping putative class action lawsuit arising from the same alleged conduct, asserting virtually identical claims, and seeking certification of an overlapping putative class. *See Matthiae v. WakeMed Health and Hospitals*, Case No.

5:22-cv-433 (E.D.N.C.). The *Matthiae* Complaint is attached hereto as Exhibit A. Co-Defendants Duke University Health System, Inc. ("Duke") and Meta Platforms, Inc. ("Meta") do not object to WakeMed's request to sever and transfer Plaintiffs' claims against WakeMed. Plaintiffs do not consent to WakeMed's request.

## I. INTRODUCTION

The Court should grant WakeMed's Motion because there is no reason for two courts to devote their limited resources to resolving virtually identical class action lawsuits against the same defendant arising out of the same alleged conduct. Nor is there any reason for WakeMed—a not-for-profit hospital system—to be forced to defend duplicative lawsuits and face the corresponding risk of inconsistent rulings. As set forth in more detail below:

- ***Both lawsuits*** assert privacy-related claims against WakeMed arising out of the alleged use of a website analytics tool known as the Facebook pixel (the "Pixel").

- ***Both lawsuits*** allege that WakeMed installed the Pixel on its MyChart portal page and that it captured website users' personal information without consent.

- ***Both lawsuits*** seek certification of a class that includes all individuals whose information WakeMed allegedly captured without consent.

In order to avoid wasting the Court's and the parties' resources, Plaintiffs' claims against WakeMed should be severed and transferred to the Eastern District. Once there, Plaintiffs' claims against WakeMed can be consolidated with the overlapping *Matthiae* lawsuit. Transfer to the Eastern District under 28 U.S.C. § 1404(a) is appropriate because:

- ***Both Plaintiffs*** are residents of Wake County (i.e., the Eastern District), not the Middle District.

- ***WakeMed is headquartered in the Eastern District***.  And as a result, any alleged acts and omissions by WakeMed almost certainly occurred there, not in the Middle District.  Moreover, the Eastern District—not the Middle District—is where relevant witnesses and documents are most likely to be located.

- ***Both Plaintiffs' claims against Duke are completely independent of their claims against WakeMed.***  This lawsuit is one of many filed against medical providers and other website operators across the country arising out of the alleged use of the Pixel.  Whether and how each medical provider or other website operator installed and used the Pixel is completely independent from how any other entity installed and used the Pixel.  Plaintiffs cannot and do not allege any agreement or coordination between WakeMed and Duke related to the Pixel. The segmented nature of this lawsuit is best reflected by the fact that, despite suing WakeMed, Plaintiff Afrika Williams alleges she is a patient of *Duke* and does not allege any interaction or connection with WakeMed whatsoever.  On top of this, all parties have already consented to the severance and transfer of Plaintiffs' claims against co-Defendant Meta Platforms, Inc. (Facebook) to the Northern District of California.

For these reasons and as set forth in greater detail below, the Court should grant WakeMed's Motion and sever and transfer Plaintiffs' claims against WakeMed to the

Eastern District because it will promote judicial economy and serve the convenience of the parties and the interests of justice.

## II.     RELEVANT BACKGROUND

Plaintiffs Kim Naugle and Afrika Williams filed their Complaint in this matter on September 1, 2022, against WakeMed and co-Defendants Meta, Duke, and "a Defendant Class of Facebook Partner Medical Providers," asserting claims based on each Defendant's alleged use of the Pixel. (Compl. ¶¶ 1–3, 10–11). On October 28, 2022, Linda Matthiae filed the *Matthiae* putative class action lawsuit against WakeMed in the Eastern District of North Carolina. As set forth in the chart below, these are duplicative, overlapping lawsuits.[1]

|  | ***Naugle* Lawsuit** | ***Matthiae* Lawsuit** |
|---|---|---|
| **Plaintiffs' Residence** | Eastern District. (Compl. ¶¶ 32–33). | Eastern District. (Ex. A ¶ 17). |

---

[1] On November 4, 2022, WakeMed filed a consent motion for an extension of the deadline to answer or otherwise respond to the Complaint pending the Court's ruling on the instant motion. (ECF No. 18). Because the Court has not ruled on its pending motion for an extension, WakeMed is filing its Motion to Dismiss.

| | | |
|---|---|---|
| **WakeMed's Headquarters** | Eastern District. (Compl. ¶ 36). | Eastern District. (Ex. A ¶ 18). |
| **Allegations** | WakeMed "knowingly convey[ed] [their] health-related information to Facebook via the Facebook Pixel" without their consent, by placing the Pixel tool on WakeMed's MyChart patient portal. (Compl. ¶¶ 3, 14, 36). | WakeMed improperly disclosed patients' personal information and health data through use of the Facebook Pixel tool on its MyChart portal. (Ex. A ¶¶ 4–7). |
| **Putative Class** | "All Facebook users who are current or former patients of medical providers [e.g., WakeMed] in the United States with web properties through which Facebook acquired patient [information and communications]" without consent. (Compl. ¶ 97). | "All persons [WakeMed] identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach"* (Ex. A ¶ 59).<br><br>*Data Breach is defined as WakeMed's alleged configuration of "the Pixel to capture and allow Private Information to be transmitted to Meta from the WakeMed website and MyChart portal." (Ex. A ¶ 7). |

| Claims | <ul><li>Breach of Contract</li><li>Invasion of Privacy</li><li>Intrusion Upon Seclusion–Constitutional Invasion of Privacy</li><li>Violation of the Electronic Communications Privacy Act</li><li>Negligent Misrepresentation</li><li>Negligence and Negligence *Per Se* (Compl. ¶¶ 32–35, 37–43, 45–46, 49–53).</li></ul> | <ul><li>Breach of Contract</li><li>Invasion of Privacy</li><li>Breach of Fiduciary Duty</li><li>Violation of North Carolina Unfair and Deceptive Trade Practices Act (Ex. A at 19–26).</li></ul> |
|---|---|---|

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 21 authorizes a court to "sever any claim against a party." A district court "has virtually unfettered discretion in determining whether or not severance is appropriate." *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 598 n. 9 (E.D. Va. 2005) (quotation omitted). And under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district or division to which all parties have consented." The "decision whether to transfer an action is committed to the sound discretion of the district court." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 518 (E.D. Va. 1999).

### IV. ARGUMENT AND CITATION TO AUTHORITY

**A.    The Court Should Sever Plaintiffs' Claims Against WakeMed.**

Courts consider four factors in determining whether to sever claims:

(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses

6

and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

*Grayson Consulting, Inc. v. Cathcart*, 2014 U.S. Dist. LEXIS 48075, at *6 (D.S.C. Apr. 8, 2014) (quoting *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007)). All of these factors strongly weigh in favor of severance here.

***First***, although Plaintiffs assert the same allegations and claims against both WakeMed and Duke—the two named medical provider Defendants —those allegations and claims are completely separate and arise out of each Defendant's independent alleged use of the Pixel. Plaintiffs cannot and do not allege any agreement or coordination between WakeMed and Duke related to the Pixel. This point is made abundantly clear by the fact that only Plaintiff Naugle alleges she is a WakeMed patient; Plaintiff Williams alleges she is a patient of Duke only. Simply put, Plaintiff Williams does not allege any relationship or interactions with WakeMed which can serve as the basis for any claims against it. Accordingly, WakeMed and Duke have entirely distinct, fact-dependent defenses against each named Plaintiff. *See Alvarez v. Lassiter*, 2018 U.S. Dist. LEXIS 165913, at *4, 6 (W.D.N.C. Sept. 26, 2018) (severing case into "five separate actions, one for each Plaintiff" because the claims are premised on "incidents [that] occurred on different dates and involve specific characteristics of the individual Plaintiffs and their circumstances"); *Scovil v. Medtronic, Inc.*, 995 F. Supp. 2d 1082, 1098 (D. Ariz. 2014) (granting defendants' motion to sever the claims of two patients against the manufacturer of a surgical device where, although the surgeries involved the same device, the claims arose out of different surgeries

7

performed by difference surgeons, and the patients would not be prejudiced by bringing their claims separately).

***Second***, adjudication of the issues raised in the Complaint will require different witnesses and different documentary proof as to each medical provider Defendant. Witnesses from Duke or any other healthcare provider that is a member of Plaintiffs' proposed defendant class will have no knowledge of WakeMed's alleged use of the Pixel on its MyChart patient portal—only witnesses from WakeMed will have that knowledge.

***Third***, Plaintiffs will not be prejudiced if severance is granted. As residents of the Eastern District, Plaintiffs will find the Raleigh Division of the Eastern District of North Carolina a more convenient forum with less travel required of them. No claims are being dismissed as a result of severance, and because this case is still in its infancy, there will be no delay stemming from severance. That Plaintiffs also could have filed this lawsuit in the Eastern District demonstrates that the Eastern District poses no special challenges for Plaintiffs. Plaintiffs may complain that they wished to sue all 664 healthcare providers alleged to have used the Pixel in one suit, but defendant class actions are notoriously fraught with due process issues and complex procedural hurdles, making it highly unlikely that such a suit would even be possible. *See Bell v. Brockett*, 922 F.3d 502, 514 (4th Cir. 2019) ("[D]efendant class actions, which are among the rarest of proceedings sanctioned under the Federal Rules of Civil Procedure, present substantial due process and other risks to absent class members.").

8

By contrast, WakeMed will be prejudiced if the claims are not severed. As a not-for-profit hospital, WakeMed should not be forced to litigate two putative class actions arising out of the same alleged facts on two different fronts—thereby exposing WakeMed to duplicative costs and potentially to inconsistent rulings—when all named plaintiffs in both lawsuits reside in the Eastern District of North Carolina.

For all of these reasons, the Court should sever Plaintiffs' claims against WakeMed.

**B.  The Court Should Transfer the Claims Against WakeMed to the Eastern District of North Carolina.**

In ruling on a request to transfer, "the Court must make two inquiries: (1) whether the plaintiff's claims might have been brought in the transferee court, and (2) whether the interest of justice and the convenience of the parties justify transfer to such district." *RHH LLC v. Innisfree Hotels, Inc.*, 2021 U.S. Dist. LEXIS 56393, at *17 (M.D.N.C. Mar. 25, 2021) (quotation omitted and alterations adopted). Courts consider eleven "discretionary factors" in determining whether transfer will serve the convenience of the parties and witnesses, and the interests of justice:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of law.

9

*Id.* at 18–19 (citations omitted). Here, Plaintiffs' claims could have been brought in the Eastern District, and the eleven factors demonstrate that the interests of justice and convenience of the parties justify transfer to that district.

1. <u>Personal Jurisdiction and Venue Favor Transfer.</u>

The Eastern District has personal jurisdiction over Plaintiffs here because they are residents of Wake County. Moreover, Plaintiffs could have filed this action in the Eastern District. (*See* Compl. ¶¶ 28, 31 (alleging bases for personal jurisdiction and venue)). "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Plaintiffs are residents of Eastern District, and WakeMed is headquartered in the Eastern District. And there are no allegations that any alleged harm or conduct by WakeMed occurred anywhere outside of the Eastern District. As a result, both personal jurisdiction and venue favor transfer to the Eastern District.

2. <u>Transfer Will Serve the Convenience of the Parties and the Interests of Justice.</u>

The eleven factors noted above support transferring Plaintiffs' claims to the Eastern District:

- Plaintiffs' initial choice of forum has little weight here because the Middle District is a "foreign forum" and Plaintiffs' claims against WakeMed "bear little or no relation to the chosen forum." *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008) (transferring action from the Middle District to the Western District because the plaintiff "maintains its principal office

10

in Charlotte" and "the key operative events appear to have occurred in Charlotte or Richmond, outside the Middle District"). Plaintiffs are residents of the Eastern District, making it their "home" forum. And as noted above, because WakeMed is based in the Eastern District, any possible contacts between the named Plaintiffs or the putative class and WakeMed would likely have occurred, if at all, in the Eastern District.

- The relative ease of access to sources of proof, the availability of compulsory process and cost of obtaining attendance of willing and unwilling witnesses, the possibility of a view of the premises, relative advantages and obstacles to a fair trial, and other practical problems all weigh in favor of transfer. Because WakeMed is based in the Eastern District, that is where likely all or nearly all of its witness and documents are located. In addition, as residents of the Eastern District, Plaintiffs' alleged use of the WakeMed website most likely occurred there. *Speed Trac Techs., Inc.*, 567 F. Supp. 2d at 804 (ruling ease of access to sources of proof weighed in favor of transfer "because all, or virtually all, North Carolina witnesses and evidence are in the Western District"). Although compulsory process may be equally available in the Middle District and the Eastern District, transfer to the Eastern District's Raleigh Division will reduce the costs, time, and burden associated with travel for nearly all involved in this litigation and possible trial. *See id.* at 805–06 (finding that the "relative time and expense of travel" weighed in favor of transfer to the Western District because the number of witnesses who have to travel and the

distance traveled will be reduced).  Furthermore, because the Eastern District is the home forum for Plaintiffs and WakeMed, neither will gain any advantage or face any disadvantage at trial from transfer.  And to the extent necessary, a view of WakeMed's headquarters can only occur by travel to the Eastern District; transferring the litigation there will ensure more convenient access.  *See id.* at 804–05.

- Local interest favors transfer as well.  "Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events."  *Speed Trac Techs., Inc.*, 567 F. Supp. 2d at 804.  The Eastern District is the location of WakeMed's headquarters and many of its healthcare facilities, the residence of the Plaintiffs and likely WakeMed's witnesses, and the likely location of "virtually all North Carolina evidence."  *See id.* (finding this factor favored transfer on similar circumstances).

- The remaining factors are either neutral or do not pose a concern here.  A judgment against WakeMed, if one is obtained, will be equally enforceable in either court. Docket conditions in both courts are similar.[2]  Finally, the same choice of law rules will apply in the Eastern District, so transfer does not create concerns relating to conflicts of laws.

---

[2] *See* Table C-5—U.S. District Courts—Civil Federal Judicial Caseload Statistics (March 31, 2022), U.S. Courts.gov, https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2022/03/31.

12

As demonstrated by the above factors, transfer will promote the convenience of the parties by reducing the burden on ***all*** parties in litigating this matter. It will also promote the interests of justice by ensuring that the litigation occurs in the district "with the closest relationship to the operative events," the same district that is also the home forum for all parties. *Speed Trac Techs., Inc.*, 567 F. Supp. 2d at 804. Transfer to the Eastern District will also allow for Plaintiffs' claims here to be consolidated with the claims in the *Matthiae* case, which will avoid the unnecessary expenditure of judicial resources on duplicative lawsuits and the burden and risk to WakeMed of being forced to litigate overlapping issues on multiple fronts.

## V. CONCLUSION

For the reasons stated above, the Court should grant WakeMed's Motion and sever and transfer Plaintiffs' claims against it to the Eastern District of North Carolina, Raleigh Division, for consolidation with *Matthiae v. WakeMed Health and Hospitals*, Case No. 5:22-cv-433.

Respectfully submitted this 8th day of November, 2022.

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. Bar No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel: (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for Defendant WakeMed Health and Hospitals*

13

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2022, I electronically filed the foregoing **DEFENDANT WAKEMED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEVER AND TRANSFER** with the Clerk of Court using the CM/ECF system, which automatically provides electronic notice to all counsel of record.

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. Bar No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel: (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for Defendant WakeMed Health and Hospitals*

# WORD COUNT CERTIFICATE

This memorandum contains 2,937 words (including footnotes, but excluding captions, signature blocks, certificate of service and this certificate). In preparing this certificate, I have relief on the word count generated by Microsoft Office Word.

This 8th day of November, 2022.

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. Bar No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel: (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for Defendant WakeMed Health and Hospitals*