# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| KIM NAUGLE and AFRIKA WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>  -and-<br><br>DUKE UNIVERSITY HEALTH SYSTEM, INC., WAKEMED, and a Defendant Class of Facebook Partner Medical Providers,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:22-CV-00727-UA-JEP** |

## <u>DEFENDANT WAKEMED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT</u>

Plaintiffs Kim Naugle and Afrika Williams' ("Plaintiffs") Complaint fails to state a single plausible claim for relief against Defendant WakeMed Health and Hospitals ("WakeMed"). As a result, the Court should grant WakeMed's Motion to Dismiss and dismiss Plaintiffs' claims against WakeMed with prejudice.

## I.  <u>INTRODUCTION</u>

WakeMed is a not-for-profit hospital system based in Raleigh, North Carolina, providing critical lifesaving services. With the Complaint, Plaintiffs seek to impose

sweeping liability on WakeMed based on allegations that software on WakeMed's website—the "Facebook Pixel"—captured users' information and sent it to Facebook without consent. But the Complaint rests entirely on barebones, conclusory allegations—not facts. Indeed, the Complaint appears to be nothing more than a hasty copy-and-paste job, mirroring similar lawsuits filed across the country. Of the Complaint's 216 individually numbered paragraphs, WakeMed is referenced by name in only six. The remainder of the Complaint focuses on other Defendants' alleged conduct or the alleged conduct of an undifferentiated amalgamation of healthcare providers that Plaintiffs refer to collectively as the "Facebook Partner Medical Providers." Plaintiffs' claims against WakeMed should be dismissed for multiple reasons, including:

- Plaintiff Williams does not state a single claim for relief against WakeMed because she does not allege *any* connection to WakeMed whatsoever. She does not allege that she is a WakeMed patient or used its website, that WakeMed captured any of her information, or that she has been injured by any alleged WakeMed conduct.

- Plaintiffs assert a breach of contract claim based on alleged violations of WakeMed's Notice of Privacy Practices ("NPP"). This claim fails because Plaintiffs do not allege any consideration. It also fails because Plaintiffs do not allege that they saw or read the NPP—or were even aware of its existence. As a result, there is no plausible inference that Plaintiffs reached a meeting of the minds with WakeMed that the NPP formed an enforceable contract.

- Plaintiffs allege WakeMed violated the federal wiretap statute—the Electronic Communications Privacy Act ("ECPA")—by sending patient communications to Facebook. But because Plaintiffs fail to plausibly allege that the communications were unlawfully intercepted in the first instance, this theory of liability fails as a matter of law.

- Rule 9(b)'s heightened pleading standard applies to Plaintiffs' negligent misrepresentation claim. However, Plaintiffs do not come close to pleading facts sufficient to satisfy Rule 9(b), and even if they did, this claim would still fail because it is barred by North Carolina's economic loss rule ("ELR").

- Plaintiffs' negligence claim fails because there is no common law duty to safeguard data or provide notice of a data breach under North Carolina law. Without a duty, there can be no negligence.

- Finally, Plaintiffs' negligence *per se* claim based on alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA"), the Federal Trade Commission Act ("FTC Act"), and the ECPA fail. Under North Carolina law only public safety statutes can give rise to claims for negligence *per se*, and none of these statutes is a public safety statute. Not surprisingly, no North Carolina court has ever recognized the negligence *per se* claim that Plaintiffs assert here.

For each of these reasons and the additional reasons set forth below, the Court should dismiss Plaintiffs' claims against WakeMed in their entirety and with prejudice.

## II.     COMPLAINT ALLEGATIONS[1]

Plaintiffs allege that WakeMed used a website analytics tool—referred to in the Complaint as the Facebook Pixel—in a manner that violated the terms of WakeMed's NPP and resulted in the improper disclosure of website users' information to Facebook.  Compl. ¶¶ 1, 10, 14.  Plaintiff Naugle alleges that she is a WakeMed patient who used the WakeMed website through its "MyChart" patient portal.  *Id.* ¶¶ 3, 32.  She does not allege that Facebook viewed, disclosed, or used her information.  Nor does she allege that she has suffered any actual loss as a result of the alleged capture of her information.  *Id.* ¶¶ 135, 142, 150, 211–212.  Plaintiff Williams does not allege *any* connection to WakeMed whatsoever.  She does not allege that she is a WakeMed patient, used the WakeMed website, or that WakeMed captured any of her information.

Plaintiffs assert claims against WakeMed for breach of contract, intrusion upon seclusion, violation of the ECPA, negligent misrepresentation, negligence, and negligence *per se*.  Each one should be dismissed with prejudice for the reasons below.

## III.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) should be granted where a plaintiff fails "to raise [their] right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain "more than labels and conclusions, and a

---

[1] WakeMed summarizes the Complaint's allegations as they must be taken as true for purposes of this Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). WakeMed does not concede the veracity of these allegations and reserves its right to contest them if this case proceeds.

4

formulaic recitation of the elements of a cause of action will not do." *Id.* Claims have "facial plausibility" only when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For claims sounding in fraud, a plaintiff must satisfy Rule 9(b)'s heightened pleading requirements. *Topshelf Mgmt. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727 (M.D.N.C. 2015).

A plaintiff must also establish standing for each claim asserted against each defendant. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021). "When asserting a claim under state law, a plaintiff must show that the state law affords them a specific 'entitlement' or 'legally protected interested' before he or she can show standing." *Knapp v. Zoetis Inc.*, 2021 U.S. Dist. LEXIS 63783, at *22 (E.D. Va. Mar. 31, 2021) (quoting *Friends for Ferrell Parkway v. Stasko*, 282 F.3d 315, 321 (4th Cir. 2002)).

## IV.    ARGUMENT AND CITATIONS TO AUTHORITIES[2]

### A.    Plaintiff Williams Does Not State a Viable Claim Against WakeMed.

The Court should dismiss all of Plaintiff Williams' claims against WakeMed. Plaintiff Williams does not allege that she is a WakeMed patient. And she does not allege—even in conclusory fashion—that she visited WakeMed's website or that

---

[2] Plaintiffs are North Carolina residents suing a North Carolina defendant for contract and tort-based claims. *See* Compl. ¶¶ 32–33. The only inference to be drawn is that any alleged contract was formed and breached, if at all, in North Carolina and any supposed harm was experienced in North Carolina. Thus, under North Carolina's choice of law rules, North Carolina law governs Plaintiffs' state law claims against WakeMed. *See Worley Claims Servs., LLC v. Jefferies*, 429 F. Supp. 3d 146, 157 (W.D.N.C. 2019); *Wheels Sports Grp., Inc. v. Solar Commc'ns, Inc.*, 194 F.R.D. 527, 534 (M.D.N.C. 1999).

5

WakeMed captured any of her information. Because Plaintiff Williams does not allege *any* interactions with WakeMed or that any of WakeMed's alleged conduct injured her, she cannot state a viable claim for relief against it. The Court should dismiss all her claims against WakeMed with prejudice.

### B. Plaintiffs' Breach of Contract Claim Fails.

Plaintiffs fail to state a viable claim against WakeMed for breach of contract. A valid contract—whether express or implied—requires "a meeting of the minds based upon a sufficient consideration, with an offer and acceptance or mutuality of obligations or promises." *Stewart v. Occidental Life Ins. Co.*, 200 S.E.2d 434, 436 (N.C. Ct. App. 1973); *see Weaver v. Academy*, 2022 U.S. Dist. LEXIS 62002, at *33 (E.D.N.C. Apr. 4, 2022) ("Except for the method of proving the fact of mutual assent, there is no difference in the legal effect of express contracts and contracts implied in fact." (quotation omitted)). Here, Plaintiffs do not plausibly allege multiple required elements to state a valid claim for relief, and as a result, the Court should dismiss this claim.

Plaintiffs assert a claim for breach of express contract based on alleged violations of WakeMed's NPP. *See* Compl. ¶ 130. Under North Carolina law, "[a] contract does not exist if one party simply believes that a contract exists, but there is no meeting of the minds." *Giuliani v. Duke Univ.*, 2010 U.S. Dist. LEXIS 32691, at *17 (M.D.N.C. Mar. 30, 2010) (quotation omitted). Here, Plaintiffs' claim falls flat because they do not allege that they actually read, saw, or were even aware of WakeMed's NPP before obtaining any services or before using the WakeMed website. Without such allegations, it is not plausible

6

that Plaintiffs and WakeMed reached a meeting of the minds on the material terms of the alleged contract—a required element of their claim. *See id.* (dismissing breach of contract claim premised on oral statements that describe "potential benefits available" to plaintiff but not conferring any rights "because the statements do not show a meeting of the minds"); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 130 (9th Cir. 2010) (holding plaintiffs did not sufficiently plead existence of a contract where they did not allege that they read or even saw the documents that they claimed gave rise to the contract); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) (finding privacy policy did not create a contract where plaintiffs never alleged that they "accessed, read, understood, actually relied upon, or otherwise considered" the policy).

Plaintiffs' breach of express contract claim fails for yet another reason—Plaintiffs do not allege (or even reference) any consideration. *See* Compl. ¶¶ 121–35; *see also Anthony Tile & Marble Co. v. H. L. Coble Constr. Co.*, 193 S.E.2d 338, 341 (N.C. Ct. App. 1972) (holding consideration by each party is a requirement for a valid and enforceable contract). Indeed, the Fourth Circuit recently affirmed dismissal of a virtually identical claim for this very reason. *See J.R. v. Walgreens Boots All., Inc.*, 2021 U.S. App. LEXIS 31389, at *12–14 (4th Cir. Oct. 19, 2021). In *Walgreens*, the plaintiffs asserted a breach of contract claim based on allegations that Walgreens violated its "Notice of Privacy Policy." *Id.* at *12. The Fourth Circuit affirmed the district court's dismissal of the claim because there was no consideration. *Id.* at *12–13. The Fourth Circuit explained that Walgreens's policy "'does not contain any exchange of promises.'" *Id.* at *13 (citations

omitted).  Rather, it "merely informs patients of what [Walgreens] is required by law to do and provides notice of Walgreens' legal duties and privacy practices with respect to [personal information]." *Id.* at \*14 (alterations adopted and quotation omitted).  Here, although Plaintiffs allege WakeMed made "promises," Plaintiffs do not quote from or cite any specific provisions of the NPP that would give rise to a plausible inference of an exchange of promises.  *See* Compl. ¶¶ 10 & n.1, 96, 129–30.[3]  Nor do Plaintiffs allege any other consideration.  Just as in *Walgreens*, WakeMed's NPP only provides information—not an exchange of promises—regarding the use and disclosure of patients' information. *See id.* at \*13–14.  Further, Plaintiffs allege that WakeMed's NPP "[is] largely dictated by law"—that is, according to Plaintiffs, the NPP merely describes what WakeMed is already obligated to do under the law.  Compl. ¶ 10.  Not only is such a description not a promise, but under North Carolina law and *Walgreens*, "[i]t is generally established that a promise to perform an act which the promisor is already bound to perform is insufficient consideration for a promise by the adverse party." *Anthony Tile & Marble Co.*, 193 S.E.2d at 341; *Walgreens*, 2021 U.S. App. LEXIS 31389, at \*13–14 (holding that a privacy policy that "merely informs patients of what it is 'required by law' to do" does not constitute an enforceable promise).  As a result, Plaintiffs do not state a viable claim for breach of express contract.

---

[3] The NPP found at the link in Compl. ¶ 10 n.1 is attached to this Motion as Exhibit 1.  The Court may consider WakeMed's NPP because Plaintiffs rely on it for the basis of their express contract claim, and there can be no dispute of its authenticity given they cited to it in their Complaint.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Plaintiffs do not fare better in their attempt to state a claim against WakeMed for breach of implied contract. *See* Compl. ¶ 131. This claim is confined to a single paragraph in which Plaintiffs allege they entered into an implied contract pursuant to which WakeMed agreed it would not "conspire with others to violate Plaintiffs' legal rights to privacy in their individually identifiable health information." *Id*. This allegation is the touchstone of a "label[] and conclusion[]" that the Supreme Court has held does not state a plausible claim for relief. *Twombly*, 550 U.S. at 555. And just like Plaintiffs' claim for breach of express contract, Plaintiffs do not allege any facts making it plausible that there was a meeting of the minds or any consideration—both required elements of a breach of contract claim. *See Weaver*, 2022 U.S. Dist. LEXIS 62002, at *34 (dismissing breach-of-implied-contract claim because complaint alleged only "plaintiffs' one-sided expectation," without "any actions by defendant from which it could reasonably be inferred that it had obligated itself" "or that it had agreed that [any] obligation was reciprocal"); *Walgreens*, 2021 U.S. App. LEXIS 31389, at *12–13 (refusing to find an implied contract under identical principles of South Carolina law).

For all of these reasons, the Court should dismiss Plaintiffs' claim for breach of contract against WakeMed with prejudice.

### C.    Plaintiffs' Intrusion Upon Seclusion Claim Fails.

Plaintiffs purport to assert a claim for intrusion upon seclusion based on an alleged violation of the California Constitution's guarantee of privacy to California citizens. Compl. ¶¶ 144, 148. But it is axiomatic that Plaintiffs—who are residents of North

9

Carolina, not California—do not have standing to bring this claim. *See Manigault-Johnson v. Google, LLC*, 2019 U.S. Dist. LEXIS 59892, at *10 (D.S.C. Mar. 31, 2019) (dismissing claim for "violation of the California constitutional right to privacy" brought by South Carolina plaintiffs because they did not have standing to assert a claim under California's constitution); *see also Knapp*, 2021 U.S. Dist. LEXIS 63783, at *22–23 ("District courts within the Fourth Circuit have consistently held that plaintiffs do not have standing to bring claims under the statutes or laws of a state where they: (1) do not reside; and, (2) have not been harmed."). The reason for this is clear: non-resident plaintiffs lack a "legally protected interest" under other states' laws, which is a core requirement for Article III standing. *Id.*; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Indeed, the California Constitution expressly affirms that it was intended only for the benefit of California citizens, stating that it was established by "the People of the State of California" for themselves—not for residents of North Carolina. *See* Cal. Const. Preamble.[4]

### D. Plaintiffs' ECPA Claim Fails.

Plaintiffs also fail as a matter of law to state a viable ECPA claim against WakeMed. As a preliminary matter, Plaintiffs ***do not*** allege that WakeMed intentionally intercepted their communications in violation of the ECPA. *See* Compl. ¶ 155. Instead,

---

[4] Even if Plaintiffs had standing to assert a claim for violation of California's constitutional right to privacy, it would fail here because there is a strong presumption against the extraterritorial application of California law. *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011); *Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 553 (Cal. 1999). Because Plaintiffs are North Carolina residents asserting a claim against a North Carolina defendant for alleged conduct and harm that occurred in North Carolina, Plaintiffs could not overcome this strong presumption.

10

Plaintiffs appear to attempt to plead a theory that WakeMed is somehow liable for disclosing their communications to Facebook. *See id.* ¶ 161. But that theory of liability also fails.

A disclosure can give rise to liability under the ECPA only if, among other things, the defendant intentionally discloses information "obtained through the interception of a wire, oral, or electronic communication ***in violation of***" the ECPA. 18 U.S.C. § 2511(1)(c) (emphasis added). In other words, the ECPA's prohibition against disclosure only "protects against the dissemination of private communications that have been *unlawfully* intercepted" in the first instance. *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009) (emphasis in original); *see also Ins. Safety Consultants, LLC v. Nugent*, 2019 U.S. Dist. LEXIS 223233, at *13–15 (N.D. Tex. Dec. 31, 2019) (finding "Plaintiffs have not carried their burden to prove by a preponderance of the evidence that [defendant] intercepted [the] emails" so "the Court need not reach whether any 'disclosure' occurred" under § 2511(1)(c)); *Jurgens v. Build.com, Inc.*, 2017 U.S. Dist. LEXIS 186999, at *11 (E.D. Mo. Nov. 13, 2017) ("[I]nterception is a necessary element for each type of violation [under the ECPA].")). Additionally, the ECPA "has an unambiguous one-party-consent standard," meaning that as long as one party to the communication consents to the capture of information, there is no illegal interception, and the disclosure of that information cannot give rise to liability under the ECPA. *Fisher v. Perron*, 30 F.4th 289, 298 (6th Cir. 2022); *Jurgens*, 2017 U.S. Dist. LEXIS 186999, at *13 ("As a party to the communication, Defendant is exempt from liability under the Wiretap Act."); 18 U.S.C. § 2511(2)(d)); *see*

*also Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 840 (M.D. Tenn. 2019) (rejecting plaintiff's argument that its former employee "intercepted" emails intended for the plaintiff company because the employee "was an original intended recipient of the emails or otherwise properly in custody of the emails in his email account that ultimately were forwarded"). Here, Plaintiffs allege WakeMed violated the ECPA by disclosing "communications that Plaintiffs exchanged with [WakeMed]." Compl. ¶ 155. As a party to the communications, WakeMed could not have intercepted its own communications in violation of the ECPA. *See Fisher*, 30 F.4th at 298. Indeed, the only plausible inference to be drawn from Plaintiffs' allegations is that WakeMed did consent to the so-called "interception" by Facebook, and thus there can be no ECPA violation. *See* Compl. ¶¶ 14, 26.

### E. Plaintiffs' Negligent Misrepresentation Claim Fails.

#### 1. *Plaintiffs Do Not Satisfy Rule 9(b)'s Heightened Pleading Standard.*

Plaintiffs' negligent misrepresentation claim must be dismissed because Plaintiffs do not plead sufficient facts to satisfy Rule 9(b)'s heightened pleading requirement. Federal courts applying North Carolina law consistently hold that this tort sounds in fraud and is subject to Rule 9(b). *See Topshelf Mgmt.*, 117 F. Supp. 3d at 727 (collecting nine federal court cases finding that a claim for negligent misrepresentation under North Carolina law is subject to Rule 9(b)'s heightened pleading requirements); *Manoula, LLC v. Ohio Sec. Ins. Co.*, 2022 U.S. Dist. LEXIS 7048, at *14 (M.D.N.C. Jan. 13, 2022). "To meet the requirements of Rule 9(b), a plaintiff must [allege the] 'time, place, and contents

of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (citations omitted).

Here, the entirety of Plaintiffs' allegations concerning the supposed misrepresentation is that "Defendant Medical Providers . . . [misrepresented] that they would not disclose the confidential information at issue for any reason or use not specifically listed in their Privacy Policies" without permission. Compl. ¶ 180. Plaintiffs do not identify any specific statements attributable to WakeMed, when those statements were made, or that they even heard or saw those statements. Plaintiffs also fail to allege what actions they took in response to any alleged misrepresentations or how they were injured as a result. Instead, Plaintiffs merely allege that they "were harmed as set forth above" with "above" being somewhere in the 184 preceding paragraphs that are all "incorporated . . . as if fully stated herein." *Id.* ¶ 185. Simply put, Plaintiffs' generic, conclusory allegation against an undifferentiated mass of supposed Defendant Medical Providers does not come close to clearing the bar set by Rule 9(b) to state a viable claim for negligent misrepresentation. *See Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 198 (M.D.N.C. 1997) (dismissing negligent misrepresentation claim for failure to satisfy Rule 9(b)). The Court should dismiss this claim.

### 2. *Plaintiffs' Negligent Misrepresentation Is Fatally Flawed for Additional Reasons.*

Plaintiffs' negligent misrepresentation claim should also be dismissed because, at most, it amounts to nothing more than a re-packaging of their breach of contract claim. As set forth above, the only basis for Plaintiffs' negligent misrepresentation claim is an

13

indirect reference to WakeMed's NPP. It is this same NPP that forms the basis for Plaintiffs' breach of express contract claim. *Compare* Compl. ¶¶ 129–30, *with* Compl. ¶ 180. But under North Carolina law, a claim for negligent misrepresentation "must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties." *Galle v. Charlotte-Mecklenburg Hosp. Auth. Atrium Health, Inc.*, 2021 U.S. Dist. LEXIS 235186, at *9–10 (W.D.N.C. Dec. 8, 2021). Plaintiffs do not, however, allege any duty imposed by law, much less plead facts making it plausible that such a duty exists. Because this claim is indistinguishable from Plaintiffs' breach of contract claim, it should be dismissed. *See id.* at *12 (dismissing negligent misrepresentation because it "sounds to the tune of a breach of contract claim"); *Cent. Transp. Int'l v. Gen. Elec. Co.*, 2008 U.S. Dist. LEXIS 49346, at *9–10 (W.D.N.C. June 27, 2008) (dismissing negligent misrepresentation claim because "[t]he entire basis of the Plaintiff's claim is that the Defendants failed to comply with the incorporated terms of the contract" but "[t]o pursue a [negligent misrepresentation] tort claim along with a breach of contract claim, 'a plaintiff must allege a duty owed to him by the defendant separate and distinct from any duty owed under a contract'").

Moreover, even if Plaintiffs' breach of contract claim survives dismissal (it should not), Plaintiffs' negligent misrepresentation claim should still be dismissed because it is barred by North Carolina's ELR. The ELR bars recovery in tort for an alleged failure by the defendant to adhere to a contract. *See Crescent Univ. City Venture, LLC v. Trussway*

14

*Mfg., Inc.*, 852 S.E.2d 98, 104 (N.C. 2020). Indeed, courts routinely dismiss tort claims where, as here, a plaintiff attempts to use an alleged contract to assert a tort claim, including claims for negligent misrepresentation. *See Thomasson v. Greensboro News & Rec., Inc.*, 2020 U.S. Dist. LEXIS 179872, at *17 (M.D.N.C. Sept. 30, 2020) (dismissing negligent misrepresentation claim under North Carolina's ELR because the "plaintiffs have not plausibly alleged a duty separate from the contract to support this tort claim"); *see also City of High Point v. Suez Treatment Sols. Inc.*, 2020 U.S. Dist. LEXIS 47641, at *19 (M.D.N.C. Mar. 19, 2020) (dismissing tort claims under ELR because allegations related to tort claims are "not identifiable and distinct from the primary breach of contract claim"); *LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*, 2014 U.S. Dist. LEXIS 154909, at *13 (E.D.N.C. Oct. 31, 2014) (same); *Cent. Transp. Int'l*, 2008 U.S. Dist. LEXIS 49346, at *9–11 (dismissing negligent misrepresentation claim without leave to amend because the "claim clearly cannot survive the economic loss doctrine"). Here, Plaintiffs' negligent misrepresentation claim is grounded entirely on WakeMed's NPP, and as a result, it is barred by the ELR.[5]

For all of these reasons, Plaintiffs do not state a viable claim for negligent misrepresentation, and this claim should be dismissed with prejudice.

---

[5] There are a limited number of exceptions to the ELR but none applies here. For instance, the ELR does not apply where there is an independent duty. Here, Plaintiff does not allege *any* independent duty in the Sixth Cause of Action for negligent misrepresentation. *See, e.g.*, *Gen. Cas. Co. v. Murphy-Hoffman Co.*, 2020 U.S. Dist. LEXIS 195881, at *5 (E.D.N.C. Oct. 21, 2020) (granting motion to dismiss negligence claim on the basis of ELR because plaintiff did not plausibly allege any independent duty).

15

### F.    Plaintiffs' Negligence Claim Fails.

To state a viable negligence claim,[6] Plaintiffs must allege facts establishing that "(1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." *See Parker v. Town of Erwin*, 776 S.E.2d 710, 729–30 (N.C. Ct. App. 2015) (internal citation and quotation marks omitted); *Keith v. Health-Pro Home Care Servs.*, 873 S.E.2d 567, 574 (N.C. 2022).    In their negligence claim, Plaintiffs allege that WakeMed breached two supposed duties: (i) a common law duty to implement security procedures to prevent information from being transmitted to Facebook (*i.e.*, a duty to safeguard), and (ii) a common law duty to provide "notice of any breach of the security of" their information (*i.e.*, a duty to notify).  Compl. ¶¶ 202, 205.  As set forth below, neither duty exists under North Carolina law, and without a duty flowing from WakeMed to Plaintiffs, there can be no negligence.  On top of this, Plaintiffs' failure to allege cognizable damages is yet another fatal defect that dooms Plaintiffs' negligence claim.

---

[6] Plaintiffs' assertion of claims sounding in negligence are fundamentally at odds with their claims under the ECPA alleging intentional (even "*criminal*") conduct.  Both the intentional claims and the negligent claims implicate the same alleged conduct.  While the Federal Rules allow Plaintiffs to plead claims in the alternative, doing so here only underscores the lack of factual plausibility for both. *Barrow v. Branch Banking & Tr. Co.*, 2017 U.S. Dist. LEXIS 150999, at *8 (W.D.N.C. Sep. 18, 2017) (discussing that a plaintiff "cannot merely import the alleged intentional conduct" into a companion negligent tort claim); *Riepe v. Sarstedt, Inc.*, 2010 U.S. Dist. LEXIS 86677, at *13 (W.D.N.C. Aug. 23, 2010) ("Without question, basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence.").

16

### 1. *WakeMed Does Not Owe Plaintiffs a Common Law Negligence Duty.*

No North Carolina court has ever recognized the common law duties to safeguard and notify that Plaintiffs seek to impose on WakeMed here. As result, this Court should "choose the narrower and more reasonable path" of holding that no such general, common-law duty exists "at least until the [North Carolina] Supreme Court tells us differently." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007); *see Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 253 (3d Cir. 2010) ("[W]e have exercised restraint in accordance with the well-established principle that where two competing yet sensible interpretations of state law exist, we should opt for the interpretation that restricts liability, rather than expands it, until the . . . [state supreme court] decides differently.") (internal quotation marks and citation omitted).

Plaintiffs also attempt to state a negligence claim by alleging that WakeMed had a "duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act." Compl. ¶ 204. But "[i]t is well established that the FTC Act does not create a private right of action for enforcement." *Wimbley v. Select Portfolio Servicing, Inc.*, 2009 WL 2045922, at *3 (M.D.N.C. July 9, 2009) (collecting authority). This Court should follow the numerous other courts that have rejected the creation of a common-law duty based on statutes for which Congress declined to create such a right. *See, e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016) (Section 5 of the FTC Act does not support negligence duty); *Sheldon v. Kettering Health*

*Network*, 40 N.E.3d 661, 672 (Ohio Ct. App. 2015) (same for HIPAA); *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 776 (M.D. Tenn. 2019).[7]

### 2. *Plaintiffs Do Not Allege Cognizable Damages.*

Plaintiffs' negligence claim fails for the additional reason that they do not plausibly allege any damages, another required element of their claim. *See Parker*, 776 S.E.2d at 729–30. Plaintiffs do not allege any facts whatsoever that they have incurred any actual losses or other concrete, actual harm. Plaintiffs also parrot allegations of "monetary damage" and "actual tangible, injury-in-fact and damages" but those are nothing but labels and conclusions—not facts—and do not state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (holding that "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a claim for relief).

Plaintiffs' attempts to concoct damages through conclusory assertions and novel theories also fail.

- Plaintiffs seek compensation for the alleged "lost time and money incurred to mitigate" the disclosure. Compl. ¶ 212. But they do not allege any facts that they

---

[7] Plaintiffs reference "industry standards," but to the extent that Plaintiffs contend that WakeMed owed a common law duty to safeguard and notify based on these unidentified standards, that does nothing to save their claim from dismissal. *See* Compl. ¶ 202. In particular, courts routinely hold that "industry-standard security procedures" like those referenced here do not give rise to an independent legal duty required to state a viable negligence claim. *Willingham v. Glob. Payments, Inc.*, 2013 U.S. Dist. LEXIS 27764, at *64 (N.D. Ga. Feb. 5, 2013) (dismissing negligence claim because "commercial standards or general industry standards" do not create a legal duty); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 2004 U.S. Dist. LEXIS 2777, at *14 (S.D.N.Y. Feb. 26, 2004) ("Although custom and practice can help define a standard of care a party must exercise *after* it has undertaken a duty, . . . custom and practice do not give rise to an independent legal duty.").

18

have actually spent time or money required to make these allegations plausible. *See Iqbal*, 556 U.S. at 678. Indeed, courts have held that alleged lost time does not give rise to cognizable damages sufficient to state a negligence claim. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (rejecting "lost time as a cognizable injury for the purpose of establishing compensable damages.").

- Plaintiffs assert an "increased risk of future harm[.]" Compl. ¶ 211. This allegation is too speculative to support a negligence claim. *See Branch v. WakeMed* (*In re Branch*), 569 B.R. 657, 672 (Bankr. E.D.N.C. 2017) (rejecting plaintiff's allegations of a risk of future harm as conclusory because there were no specific allegations that anyone obtained or used his information). Moreover, "[t]hreats of future harm, on their own, are not cognizable negligence injuries." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 46 (D. Ariz. 2021).

- Plaintiffs allege that they "have suffered or will suffer . . . embarrassment, humiliation, frustration, and emotional distress." Compl. ¶ 211. But courts routinely hold that allegations just like these are not damages sufficient to state a negligence claim. *See, e.g.*, *Jones v. Kroger Ltd. P'ship*, 80 F. Supp. 3d 709, 715 (W.D. Va. 2015) (characterizing similar allegations as "boilerplate, run-of-the-mill emotional injuries that 'fall woefully short'" of sufficiently alleging the required actual damages); *Jordan v. Trans Union LLC*, 2006 U.S. Dist. LEXIS 38785, at *21–23 (N.D. Ga. June 12, 2006) (dismissing negligence claim for failure to allege damages based on "stress, frustration, embarrassment, anger, humiliation,

19

intimidation, and irritability"); *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 453 (Tex. Ct. App. 2002) (dismissing negligence claim for failure to plead damages based on allegations of "mental anguish and emotional distress").

- Plaintiffs also claim damages in the form of the "lost value of their PII." Compl. ¶ 212. Courts reject this as a viable damages theory where, as here, the plaintiff does not allege "the existence of a market for the personal information and an impairment of the ability to participate in that market." *Gardiner v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 211251, at *6 (N.D. Cal. July 28, 2021); *see also Chambliss v. CareFirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (alleged diminished value of PII was not injury-in-fact because plaintiffs did not allege attempts to sell their personal information or that they were "forced [] to accept a decreased price for that information"); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016).

Accordingly, Plaintiffs' negligence claims are fatally flawed and must be dismissed for failure to plausibly plead actual damages.

### G. Plaintiffs' Negligence *Per Se* Claim Fails.

Plaintiffs allege in conclusory fashion that "Defendants' statutory violation of the FTC Act, HIPAA, the ECPA and its [sic] failure to comply with applicable laws and regulation constitutes negligence per se." Compl. ¶ 213. This claim fails for multiple reasons.

20

First, under North Carolina law not every statutory violation gives rise to a negligence *per se* claim. Rather, a plaintiff must establish a violation of a public safety statute. *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 262 (M.D.N.C. 2015). A public safety statute is one "imposing upon the defendant a specific duty for the protection of others" that "is designed for the protection of life or limb." *Parker v. Colson*, 831 S.E.2d 102, 105–06 (N.C. Ct. App. 2019). None of the three statutes here—the FTC Act, HIPAA, or the ECPA—meet this definition. Not surprisingly, no court applying North Carolina law has ever recognized a negligence *per se* claim based on an alleged violation of any of these statutes. On this basis alone, Plaintiffs' negligence *per se* claim fails.

Plaintiffs' attempt to state a negligence *per se* claim based on alleged violations of the FTC Act and HIPAA fail for yet another reason. Under North Carolina, a statute will support a claim for negligence *per se* only if the statute has a private right of action. *See Hetzel v. JPMorgan Chase Bank*, 2014 WL 7336863 (E.D.N.C. Dec. 17, 2014). Here, a mountain of case law makes clear that there is no private right of action under either the FTC Act or HIPAA.[8] *See Faber v. Ciox Health, LLC*, 944 F.3d 593, 596–97 (6th Cir. 2019) (noting "a consensus among our sister circuits that there is no private right of action under HIPAA"); *Walgreens*, 2021 U.S. App. LEXIS 31389, at *9 (affirming dismissal of negligence *per se* claim under South Carolina law based on alleged violations of FTC Act and HIPAA because neither federal statute contained a private right of action); *Harris v.*

---

[8] Although the ECPA includes a private right of action, it does not give rise to a viable negligence *per se* claim here because Plaintiffs fail to state a viable ECPA violation against WakeMed. *See supra* Section IV.D.

*North Carolina*, 2018 U.S. Dist. LEXIS 148246, at *5 (E.D.N.C. July 10, 2018) (holding "no conferred private right of action under" HIPAA).

Moreover, Plaintiffs' attempt to state a negligence *per se* claim based on an alleged "failure to comply with [unidentified] applicable laws and regulations" (Compl. ¶ 213) is nothing but a conclusory allegation, does not state a claim for relief, and runs directly afoul of *Twombly*'s prohibition on "labels and conclusions." *Twombly*, 550 U.S. at 555.

Finally, the same failure of Plaintiffs to plausibly allege damages for their negligence claim set forth above in Section IV.F.2 is another fatal defect in their negligence *per se* claim. *See Comm. to Elect Forest v. Emps. PAC*, 853 S.E.2d 698, 726 (N.C. 2021) ("[I]n a common law action where actual injury is a necessary element of the claim, such as negligence, the proper disposition for failure to allege actual injury or damages is . . . dismissal for failure to state a claim upon which relief can be granted."); *Baldwin v. GTE S., Inc.*, 439 S.E.2d 108, 109 (N.C. 1994) (holding that a plaintiff must "suffer harm" to assert a negligence per se claim).

For each of these reasons, the Courts should dismiss Plaintiffs' negligence *per se* claim.

### V.   CONCLUSION

For all the reasons stated herein, the Court should grant WakeMed's Motion to Dismiss and dismiss Plaintiffs' claims against WakeMed with prejudice.

22

Respectfully submitted this 8th day of November, 2022.

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. Bar No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel:  (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for Defendant WakeMed*

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2022, I electronically filed the foregoing **DEFENDANT WAKEMED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which automatically provides electronic notice to all counsel of record.

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. Bar No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel: (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for Defendant WakeMed Health
and Hospitals*

# WORD COUNT CERTIFICATE

This memorandum contains 5,987 words (including footnotes, but excluding captions, signature blocks, certificate of service and this certificate). In preparing this certificate, I have relief on the word count generated by Microsoft Office Word.

This 8th day of November, 2022.

/s/ *Matthew P. McGuire*
Matthew P. McGuire
N.C. Bar No. 20048
ALSTON & BIRD LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Tel: (919) 862-2200
Fax: (919) 862-2260
matt.mcguire@alston.com

*Counsel for Defendant WakeMed Health and Hospitals*